OMAHA FOLDING MACHINE COMPANY, APPELLANT, V.
HENRY E. STRIPLIN, APPELLEE.

FILED MAY 17, 1913. No. 17,184.

Appeal: EVIDENCE: SUFFICIENCY. The evidence examined and set out in the opinion, *held* insufficient to sustain the verdict and judgment.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed.*

*Mockett & Peterson,* for appellant.

*Guile & Guile,* contra.

FAWCETT, J.

In 1908 plaintiff, a copartnership composed of Clark A. Sigafoos and Henry Haubens, commenced the manufacture of a newspaper folding machine. Mr. Haubens was apparently financing the enterprise and Mr. Sigafoos conducting the business. Plaintiff alleges that defendant

entered its employ about July 1, 1908. Defendant fixes the date as March 19. After entering its employ defendant continued to work for it until some time in December following. This action was commenced by plaintiff in justice court, in Lancaster county, to recover the sum of $73.23, which plaintiff claimed to have advanced to defendant for expenses and to apply on salary not earned at the time defendant quit his employment with it. Defendant filed an answer and counterclaim, in which he denied being indebted to plaintiff, and claimed that plaintiff owed him $331 as salary earned, for which he had not been paid; and, in order to bring his claim within the jurisdiction of the justice of the peace, he remitted all in excess of $200. The justice of the peace found against the plaintiff on its cause of action, and against the defendant on his counterclaim, and dismissed the action at plaintiff's cost. Plaintiff appealed to the district court, where upon a trial to a jury there was a verdict against plaintiff upon its cause of action, and in favor of defendant for the full amount claimed in his cross-petition. From a judgment upon the verdict plaintiff appeals.

There are no questions of law involved which require consideration. The case turns entirely upon the question of the sufficiency of the evidence to sustain the verdict and judgment. It is undisputed that when defendant commenced working for the company it was for a compensation of $15 a week. Mr. Sigafoos testifies that there was never any agreement for any different compensation during the time defendant continued in its employ. A transcript of the day-book of plaintiff, appearing in the abstract, the accuracy of which is not questioned, covers a period of time from July 6 to December 19, 1908. It shows that all money paid to defendant for salary during that entire period of time was at the rate of $15 a week. Defendant does not testify to having at any time received salary at any greater rate, notwithstanding the fact that he bases his claim upon an allegation that from July 1,

1908, his salary should have been at the rate of $125 a month. During the period of time covered by the transcript from the day-book above referred to, plaintiff paid defendant on salary $315, and for expenses $209.77.

We think the evidence fully sustains the jury in finding against the plaintiff on its alleged cause of action; but we are compelled to hold that the verdict in favor of defendant upon his counterclaim cannot be sustained, even on the testimony of defendant himself.

Defendant testified that Mr. Sigafoos met him in Lincoln, "and asked me to come and help him, saying that he had a couple of machines partly finished and would like to get them out, and thought he could get them out within a couple of weeks, and asked me to come up and help him out with those machines. Q. What, if anything, was said with reference to salary at that time? A. Well, he said to me that we are just starting up and I can't afford to pay you over $15 a week until we get those machines out and get started, and get squared up. He said he had been quite a little while on the machines, getting them ready to go. Q. Sigafoos was the man that was pushing this invention? A. Yes; the promoter. * * * He was the promoter of this machine and the manager. Q. When was the next conversation you had with Mr. Sigafoos, state as near as you can remember, in reference to the salary? A. In reference to salary, was not many— we completed those two machines. Instead of getting them out within a couple of weeks, we did not get them out until about the first days of May—went out and put them up. And I think as we came back on the train we were talking with regard to the salary, and I said to him, 'Sig, I am not making enough out of this to pay my expenses, my home expenses, and keep up,' and he says, 'Well, I will tell you what I am doing,' he says, 'I am just taking enough out of the concern to live with;' he says, 'We are not making anything, not taking anything yet,' and he says, 'We will just aim to take enough to do each of us to meet our home expenses until we get the

thing up to where it is right and good,' he says, 'and when we get started on the road—goods started—the job is worth then to you $125 a month; we can afford to pay you $125 a month when we get started up and straightened up on our feet.' And he says, 'It might get better eventually according to how the machine comes along, how it develops.' Q. And you continued to work for them from that time on until January, about the 1st of January, wasn't it? A. No; it was the latter part of December, the 29th of December, I think it was, the 29th day of December. * * * I went on the road about along the 1st of July, 1908. I was on the road off and on from that time until I left there; I think I was at Red Oak three or four weeks or such a matter, two or three or four weeks or such a matter in the shop, and then was in the shop a few days at Omaha. They had a shop in Red Oak, and in August and September I was there, part of the time during August and September, and I think in and out on the road, two or three trips or such a matter, while I was at Red Oak. I was hurt in a railroad wreck on October 26, and didn't go back to work until November 24. Q. What else did Mr. Sigafoos say, if anything, with reference to salary in your conversation you have just told about? A. Well, I don't know that there was anything else said at that time. Q. Or at any other time? A. Not that I know of, no, sir; not that I can remember of any other time."

The only other evidence offered by defendant is the testimony of Mr. H. B. Berggren, who testifies that he is in the transfer business in Lincoln; that in the latter part of July or first part of August he had a conversation with Sigafoos; that he asked Sigafoos where Striplin was, whether he was working for him or not; that he answered he was; that witness' reason for asking him was that he was figuring on Mr. Striplin to go into business with him. He then states: "And he said he was traveling for him on the road, and, of course, he had just started up and was making machines, improving them, or something

more than I can repeat, and I don't just remember word for word. Q. Well, just in your own way tell the jury; was anything said about the salary of Striplin? A. There was. Q. What, if anything? A. Why, I said to Mr. Sigafoos that I would like to have Mr. Striplin with us, and he says, well, he says, he is getting a good salary with us now, he says, he is getting a hundred and a quarter a month, but how long I don't know; he just said he was getting a hundred and a quarter a month at that time, and he was traveling on the road for them."

Mr. Sigafoos testified: "Q. You heard the testimony of Mr. Berggren when he said that you told him that Mr. Striplin was receiving $125? A. Yes; I heard that. Q. Is that a fact, or not? A. No, sir." He further testified: "Q. Just state to the jury what was said by Mr. Berggren and what was said by you. A. Berggren and I were visiting in his office; he said to me, they tell me you are —no, I think he said Strip tells me—at any rate he, or somebody else, tells me that you are paying Strip $125 a month. I knew they were figuring with Striplin at that time, and, not wishing to disrupt what figures might be going on between them, I said $125 is a pretty nice salary, Henry. Yes; he says, it is. I presume that left the inference with Berggren that I did do that."

This version of the interview between Sigafoos and Berggren was not called to the attention of or contradicted by the latter. Defendant, on recall, was again interrogated in re the talk on the train in May. He then testified that, after telling Mr. Sigafoos that he was not getting enough money to keep up his home expenses, Mr. Sigafoos said: "I am just taking enough out to meet my expenses and go along and keep up with, and he says I will see that you shall do the same, and he says while we are new, just starting up, and have been to a big expense, I don't feel like that I could draw on the old gentleman (referring to Mr. Haubens) for any more money, seeing I have him considerable in debt, with no income. And I think from that on then I got a little bit more money; I

got six or eight dollars a week more money from that time on. I had been paying my own expenses, board and room up until that time, and from that on then I drew enough to meet my expenses while I was in Omaha. While I was in Red Oak my expenses were paid." He then explains his reason for quitting and returning to Lincoln, by stating that his son was taken sick; that he came home and found the boy in bad shape; that he died on the 3d day of February following; and that he subsequently received a letter from Mr. Sigafoos that he had an overdraft. "Q. That is the first you ever knew that they claimed an overdraft? A. Yes; that he claimed an overdraft against me. Q. And you had been going on the presumption that they owed you all the time? A. Yes; with the understanding that when the machine got up to where it could, and brought money enough in, that I should have my pay as we had talked."

There is an entire absence of any evidence in the record even tending to show that the business had ever, up to the time he quit work, reached the point or was in any condition to justify defendant in claiming the increased salary referred to. He never at any time during his employment with plaintiff made any such claim, nor, according to his own testimony, was the question ever again talked of between them, after the conversation on the train in May. A claim for such a substantial advance in salary should be supported by some tangible proof. No such proof was furnished.

For the insufficiency of the evidence upon this important point, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

BARNES, SEDGWICK and HAMER, JJ., not sitting.